**FILED**

**FEB 2 8 2013**

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
IN RE APPLICATION OF THE          )
UNITED STATES OF AMERICA FOR      )    MISC. NO. 13-179
AN ORDER AUTHORIZING THE          )
INSTALLATION AND USE OF PEN       )
REGISTER AND TRAP AND             )
TRACE DEVICES                     )
                                  )    Filed Under Seal
```

## APPLICATION

The United States of America, moving by and through AUSA Mona N. Sahaf, its

undersigned counsel, respectfully submits under seal this ex parte application for an Order

pursuant to 18 U.S.C §§ 3122 and 3123, authorizing the installation and use of pen registers and

trap and trace devices ("pen-trap devices") on the Yahoo! Incorporated email account

████████████████ whose listed subscriber is not known.  In support of this application,

the United States asserts:

      1.     This is an application, made under 18 U.S.C. § 3122(a)(1), for an order under 18

U.S.C. § 3123 authorizing the installation and use of a pen register and a trap and trace device.

      2.     Under 18 U.S.C. § 3122(b), such an application must include three elements:

(1) "the identity of the attorney for the Government or the State law enforcement or investigative

officer making the application"; (2) "the identity of the law enforcement agency conducting the

investigation"; and (3) "a certification by the applicant that the information likely to be obtained

is relevant to an ongoing criminal investigation being conducted by that agency." 18 U.S.C. §

3122(b).

3.      The attorney for the Government making the application is the undersigned, Mona N. Sahaf, who is an "attorney for the government" as defined in Rule 1(b)(1) of the Federal Rules of Criminal Procedure.

4.      The law enforcement agency conducting the investigation is the Federal Bureau of Investigation ("FBI").

5.      The applicant hereby certifies that the information likely to be obtained by the requested pen-trap devices is relevant to an ongoing criminal investigation being conducted by the FBI.

## ADDITIONAL INFORMATION

6.      Other than the three elements described above, federal law does not require that an application for an order authorizing the installation and use of a pen register and a trap and trace device specify any facts. The following additional information is provided to demonstrate that the order requested falls within this Court's authority to authorize the installation and use of a pen register or trap and trace device under 18 U.S.C. § 3123(a)(1).

7.      A "pen register" is "a device or process which records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted." 18 U.S.C. § 3127(3). A "trap and trace device" is "a device or process which captures the incoming electronic or other impulses which identify the originating number or other dialing, routing, addressing, and signaling information reasonably likely to identify the source of a wire or electronic communication." 18 U.S.C. § 3127(4).

8.     In the traditional telephone context, pen registers captured the destination phone numbers of outgoing calls, while trap and trace devices captured the phone numbers of incoming calls. Similar principles apply to other kinds of wire and electronic communications, as described below.

9.     The Internet is a global network of computers and other devices. Every device on the Internet is identified by a unique number called an Internet Protocol, or "IP" address. This number is used to route information between devices. Two computers must know each other's IP addresses to exchange even the smallest amount of information. Accordingly, when one computer requests information from a second computer, the requesting computer specifies its own IP address so that the responding computer knows where to send its response. An IP address is analogous to a telephone number and can be recorded by pen-trap devices, and it indicates the online identity of the communicating device without revealing the communication's content.

10.     A network is two or more computers or other devices connected to each other that can exchange information with each other via some transmission method, such as by wires, cables, or radio waves. The equipment that connects a computer or other device to the network is commonly referred to as a network adapter. Most network adapters have a Media Access Control ("MAC") address assigned by the manufacturer of the adapter that is designed to be a unique identifying number. An adapter's unique MAC address allows for proper routing of communications on a local area network and may be used for other purposes, such as authentication of customers by some network service providers. Unlike a device's IP address that often changes each time a device connects to the Internet, a MAC address is fixed at the time of manufacture of the adapter. Because the address does not change and is intended to be unique, a

MAC address can allow law enforcement to identify whether communications sent or received at different times are associated with the same adapter.

11.     On the Internet, data transferred between devices is not sent as a continuous stream, but rather it is split into discreet packets. Generally, a single communication is sent as a series of packets. When the packets reach their destination, the receiving device reassembles them into the complete communication. Each packet has two parts: a header with routing and control information, and a payload, which generally contains user data. The header contains non-content information such as the packet's source and destination IP addresses and the packet's size.

12.     In addition, different Internet applications are associated with different "port numbers," or numeric identifiers. The port number is transmitted along with any communication using that application. For example, port 80 typically is associated with communications involving the World Wide Web.

13.     An email message has its own routing header, in addition to the source and destination information associated with all Internet data. The message header of an email contains the message's source and destination(s), expressed as email addresses in "From," "To," "CC" (carbon copy), or "BCC" (blind carbon copy) fields. Multiple destination addresses may be specified in the "To," "CC," and "BCC" fields. The email addresses in an email's message header are like the telephone numbers of both incoming and outgoing calls, because they indicate both origin and destination(s). They can be recorded by pen-trap devices and can be used to identify parties to a communication without revealing the communication's contents.

14.     "Voice-over-Internet Protocol" ("VoIP") is an Internet protocol used in place of telephones. VoIP takes an audio signal such as a voice, turns it into digital data, and then

4

transmits it via the Internet. Some VoIP services can allow users to make calls using regular telephone handsets connected to a converter box. The converter box connects to the Internet and allows users to place and receive calls with other users of VoIP services or users of traditional phone service. When a user makes or receives telephone calls using VoIP, he or she initiates a transfer of data between devices connected to the Internet. Therefore, a device's IP address can be recorded by pen-trap devices and indicates the on-line identity of the device communicating without revealing the communication's content.

15.     In addition, some VoIP communications use traditional telephone numbers. Pen-trap devices can record these numbers and they can identify parties to a communication without revealing the communication's content.

## THE RELEVANT FACTS

16.     The United States government, including the FBI, is investigating a possible violation of, inter alia, Title 18 United States Code Section 793.

17.     The conduct being investigated involves use of the Yahoo! Incorporated email account ███████████████ To further the investigation, investigators need to obtain the dialing, routing, addressing, and signaling information associated with communications sent to or from that email account.

18.     The pen-trap devices sought by this application will be installed at location(s) to be determined, and will collect dialing, routing, addressing, and signaling information associated with each communication to or from the Yahoo! Incorporated email account ████████████████████ including the date, time, and duration of the communication, and the following, without geographic limit:

- Yahoo! Incorporated IP addresses, including IP addresses associated with access to the account

- Headers of email messages, including the source and destination network addresses, as well as the routes of transmission and size of the messages, but not content located in headers, such as subject lines

- the number and size of any attachments

- MAC addresses

- Port numbers

- Packet headers

- Source and destination telephone numbers and email addresses

- "Post-cut-through dialed digits," which are digits dialed after the initial call set up is completed, subject to the limitations of 18 U.S.C. § 3121(c) [1]

## GOVERNMENT REQUESTS

19.     For the reasons stated above, the United States requests that the Court enter an Order authorizing installation and use of pen-trap devices to record, decode, and/or capture the dialing, routing, addressing, and signaling information described above for each communication to or from the Yahoo! Incorporated email account ████████████ along with the date, time, and duration of the communication, without geographic limit. The United States does not request and does not seek to obtain the contents of any communications, as defined in 18 U.S.C. § 2510(8), pursuant to the proposed Order.

---

1   In the event that the pen-trap devices capture some post-cut-through dialed digits that could be considered call content, such as account numbers or passwords, despite the government's use of reasonably available technology to avoid the recording or decoding of such content, the United States will make no affirmative investigative use of such information.

20.     The United States further requests that the Court authorize the foregoing installation and use for a period of sixty days, pursuant to 18 U.S.C. § 3123(c)(1).

21.     The United States further requests, pursuant to 18 U.S.C. §§ 3123(b)(2) and 3124(a)-(b), that the Court order Yahoo! Incorporated and any other person or entity providing wire or electronic communication service in the United States whose assistance may facilitate execution of this Order to furnish, upon service of the Order, information, facilities, and technical assistance necessary to install the pen-trap devices, including installation and operation of the pen-trap devices unobtrusively and with minimum disruption of normal service. Any entity providing such assistance shall be reasonably compensated by the FBI, pursuant to 18 U.S.C. § 3124(c), for reasonable expenses incurred in providing facilities and assistance in furtherance of this Order.

22.     The United States further requests that the Court order Yahoo! Incorporated and any other person or entity whose assistance may facilitate execution of this Order to notify the FBI of any changes relating to the email account, including changes to subscriber information, and to provide prior notice to the FBI before terminating service to the email account.

23.     The United States further requests that the Court order that the FBI and the applicant AUSA Mona Sahaf have access to the information collected by the pen-trap devices as soon as practicable, twenty-four hours per day, or at such other times as may be acceptable to them, for the duration of the Order.

24.     The United States further requests, pursuant to 18 U.S.C. § 3123(d)(2), that the Court order Yahoo! Incorporated and any other person or entity whose assistance facilitates execution of this Order, and their agents and employees, not to disclose in any manner, directly or indirectly, by any action or inaction, the existence of this application and Order, the resulting

pen-trap devices, or this investigation, except as necessary to effectuate the Order, unless and until authorized by this Court.

25. The United States further requests that this application and any resulting Order be sealed until otherwise ordered by the Court, pursuant to 18 U.S.C. § 3123(d)(1).

26. The United States further requests that the Clerk of the Court provide the United States Attorney's Office with three certified copies of this application and Order, and provide copies of this Order to the FBI and Yahoo! Incorporated upon request.

27. The foregoing is based on information provided to me in my official capacity by agents of the FBI.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 28th day of February 2013.

Respectfully submitted,

Ronald C. Machen Jr.
UNITED STATES ATTORNEY

Mona Sahaf
Assistant United States Attorney
National Security Section
555 Fourth Street, N.W., 11th Floor
Washington, D.C. 20530
Tel: 202-252-7080
E-mail: Mona.Sahaf@usdoj.gov